**JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerlando Curreri, | No. CV 09-0630-PHX-JAT (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Paul R. Babeu, et al., | |
| Defendants. | |

Plaintiff Gerlando Curreri brought this civil rights action under 42 U.S.C. § 1983 against three Pinal County Jail employees. Defendants move for summary judgment (Doc. 119). Plaintiff opposes the motion (Doc. 123).

The Court will grant in part and deny in part Defendants' motion. The Court will therefore deny Plaintiff's motion for status as moot (Doc. 128).

**I.    Background**

Plaintiff's claims stem from his confinement in the Pinal County Jail in Florence, Arizona (Doc. 9 at 1). He named as Defendants: (1) former Nurse Practitioner Devonna Johnson; (2) Health and Human Services Manager Elke Jackson; and (3) Commander Valenzuela[1] (Doc. 9).[2]

---

[1] Plaintiff identified this Defendant as Commander Venezuela. The Court will refer to Defendant by his correct surname, Valenzuela.

[2] Upon screening, the Court dismissed Schriro, Ryan, Baldwin, Hernandez, Alford, Beasely, Winslow, Latto, Chacon, MacKenzie, Jager, and Irby as Defendants (Doc. 15).

In his First Amended Complaint, Plaintiff alleged that his Fourteenth Amendment rights were violated by Defendants' deliberate indifference to his serious medical needs. Specifically, Plaintiff claimed that Johnson denied Plaintiff surgery to remove tumors on Plaintiff's bones and denied Plaintiff necessary pain medication (Count 4). Plaintiff further alleged that Johnson ignored the findings of numerous doctors and failed to respond reasonably to Plaintiff's serious medical needs (Count 5). Plaintiff asserted that Jackson was aware of Plaintiff's medical condition and that it causes extreme pain but took no action to mitigate Plaintiff's pain or respond to Plaintiff's requests for medical assistance (Counts 6 and 7). Finally, Plaintiff alleged that Valenzuela punished Plaintiff by informing Plaintiff that his surgery was considered elective and would not be covered by the jail. Valenzuela also allegedly told Plaintiff that he would no longer receive written responses to his grievances and, if Plaintiff continued to file grievances, he would be in "a lot of trouble" (Count 14).[3] Plaintiff sought injunctive relief, compensatory and punitive damages, and costs (id. at 20).

The Court determined that Plaintiff stated Fourteenth Amendment deliberate indifference claims against Defendants (Doc. 11 at 5) (noting that a pretrial detainee's claim for unconstitutional conditions of confinement arises under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment).

Defendants move for summary judgment on the grounds that (1) they were not deliberately indifferent to Plaintiff's serious medical needs, (2) neither Valenzuela nor Jackson could approve or deny Plaintiff's request for surgery, and (3) Plaintiff is not entitled to injunctive relief or punitive damages (Doc. 119).

**II.  Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The

---

[3] The Court dismissed Counts 1–3, 8–13, and 15–17 for failure to state a claim (Doc. 11 at 14).

1  movant bears the initial responsibility of presenting the basis for its motion and identifying
2  those portions of the record, together with affidavits, that it believes demonstrate the absence
3  of a genuine issue of material fact. Celotex, 477 U.S. at 323.

4      If the movant meets its initial responsibility, the burden then shifts to the nonmovant
5  to demonstrate the existence of a factual dispute and that the fact in contention is material,
6  i.e., a fact that might affect the outcome of the suit under the governing law, and that the
7  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
8  the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton
9  Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need
10 not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v.
11 Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific
12 facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v.
13 Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P.
14 56(c)(1).

15     At summary judgment, the judge's function is not to weigh the evidence and
16 determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477
17 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all
18 inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited
19 materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

20 **III.  Facts**

21     In support of their motion, Defendants submit a separate Statement of Facts (DSOF)
22 (Doc. 120), which is supported by the declarations of Defendants and Dr. Amalia Maria de
23 Comas (id., Exs. 1-4). The declarations, in turn, are supported by Plaintiff's extensive
24 medical records (id.). In opposition, Plaintiff filed a separate Statement of Facts (PSOF)
25 (Doc. 124), a corresponding disputed Statement of Facts (Doc. 125), both of which are
26 supported by exhibits and his declaration (id., Exs.).

27     The undisputed and disputed facts relevant to Plaintiff's claims are as follows:
28

1       Plaintiff was housed in the Pinal County Jail from March 29, 2007 until his transfer
2  to the Arizona Department of Corrections on June 24, 2011 (DSOF ¶¶ 1-2). In 1987,
3  Plaintiff was diagnosed with Multiple Hereditary Exostoses (MHE), which results in the
4  growth of multiple, generally benign osteochondromas (cartilage tumors) of the long bones.
5  Stedman's Medical Dictionary (27th ed. 2000). Plaintiff had received treatment for this
6  condition, including surgery, multiple imaging studies, and constant pain management (PSOF
7  ¶¶ 3-4, 7-9).
8       Upon his incarceration, Plaintiff continued his oxycodone pain regimen and was
9  examined by the jail's physician (id. ¶¶ 21-23). Plaintiff's jail medication log reflects that
10 from his incarceration until October 4, 2007, Plaintiff was prescribed and received
11 oxycodone (Doc. 120-2 at 239-293[4]).
12      Devonna Johnson is a Licensed Nurse Practitioner, and has been a Registered Nurse
13 since 1994 (Doc. 120, Ex. 3, Johnson Decl. ¶ 1). Johnson worked at the Pinal County Jail
14 from September 10, 2007 until March 13, 2009 (id. ¶ 5). Johnson states that after she
15 initially saw Plaintiff, she researched his condition and sought his medical records to
16 understand the nature of his condition and to identify the appropriate treatment (id. ¶¶ 8, 10-
17 12). Johnson attests that she confirmed that annual imaging scans were necessary to rule out
18 malignant tumors (id. ¶ 15). Johnson further states that during her 18-month tenure at the
19 jail, she or another medical provider saw Plaintiff 123 times and he received two bone scans
20 (id. ¶¶ 7, 15). With respect to pain medication, Johnson attests that she was concerned about
21 addiction from his long-term opiate use (id. ¶ 18). As a result, she placed Plaintiff on an
22 opiate withdrawal protocol to control his pain and curtail any withdrawal side effects (id.
23 ¶ 19). Johnson also prescribed medications to treat hypertension, hyperlipidemia,
24 fibromyalgia, and depression (id. ¶ 21).
25      Because of Plaintiff's recurring pain complaints, Johnson referred Plaintiff to an
26 outside orthopedic oncologist, Dr. Bruce Mallin, for evaluation (id. ¶ 24). Dr. Mallin ordered

---

28   [4]Citation refers to the page number in the Court's Case Management/Electronic Case Filing system.

- 4 -

1  an MRI to assess Plaintiff's condition (id. ¶ 25). Before Dr. Mallin reviewed the MRI,
2  Johnson left the jail for another job (id. ¶ 27).

3  Dr. Mallin recommended surgery to resect the tumors on Plaintiff's left lower leg to
4  improve mechanics and minimize the symptoms in his leg and ankle (Doc. 120-3 at 419, 06-
5  17-2009 Chart Note). Plaintiff did not receive surgery (id., 06-26-2009 Chart Note).

6  Elke Jackson was the Pinal County Director of Correctional Health Services from
7  May 8, 2006 until June 3, 2011 (DSOF ¶ 50). Her responsibilities included ensuring that
8  correctional health staff complied with statutory requirements, county policies, procedures,
9  and protocols (id. ¶ 51). She is not a medical provider and did not have the authority to
10 prescribe medications or treatment but responded to inmates' grievances (id. ¶¶ 52-53).

11 Jail Commander Valenzuela also is not a medical provider and did not have the
12 authority to prescribe medications or order medical procedures (id. ¶ 56).

13 **IV.  Analysis**
14     **A.   Medical Care**
15         **1. Legal Standard**

16 Pretrial detainees are protected by the Fourteenth Amendment's Due Process clause,
17 which establishes that "detainees have a right against jail conditions or restrictions that
18 'amount to punishment.'" Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008).
19 The Fourteenth Amendment standard is more protective than the Eighth Amendment
20 standard, which protects convicted prisoners against cruel and unusual punishment. Id.
21 Nonetheless, the Eighth Amendment deliberate-indifference standard is applied to medical-
22 care claims brought by pretrial detainees against jail officials. Simmons v. Navajo County,
23 Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (citations omitted).

24 Under the Eighth Amendment standard, a prisoner must demonstrate "deliberate
25 indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)
26 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-
27 indifference analysis. First, a prisoner must show a "serious medical need." Jett, 439 F.3d
28 at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's

1  condition could result in further significant injury or the 'unnecessary and wanton infliction
2  of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other
3  grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)
4  (internal citation omitted).

5  Second, a prisoner must show that the defendant's response to that need was
6  deliberately indifferent. Jett, 439 F.3d at 1096. To show deliberate indifference, the prisoner
7  "must show that the course of treatment the doctors chose was medically unacceptable under
8  the circumstances" and that the defendant "chose this course in conscious disregard of an
9  excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)
10 (citations omitted). This second prong is met if the prisoner demonstrates (1) a purposeful
11 act or failure to respond to a prisoner's medical need and (2) harm caused by the indifference.
12 Id.

13 Prison officials are deliberately indifferent to a prisoner's serious medical needs if
14 they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright,
15 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not
16 constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental
17 Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison
18 Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). And a mere difference of opinion
19 as to which medically acceptable course of treatment should be followed does not amount
20 to deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

21 **2. Arguments**
22 ***a. Defendants' Motion***

23 Defendants argue that Johnson was not deliberately indifferent to Plaintiff's serious
24 medical needs as evidenced by the record, which they claim shows that she saw Plaintiff 123
25 times during the 18 months she worked at the jail, and that she monitored Plaintiff's
26 condition, ordered two bone scans to rule out malignant tumors, and prescribed him
27 medication (Doc. 119 at 6-7). Further, Defendants assert that Johnson arranged for
28 Plaintiff's examination by an outside orthopedic specialist, Dr. Mallin, who ordered an MRI.

- 6 -

1  But before Dr. Mallin could review the MRI or make a surgical recommendation, Johnson
2  left her position at the jail, which, Defendants argue, precludes a finding that she denied
3  Plaintiff surgery (id. at 8).
4      Defendants argue that Plaintiff's claim merely raises a difference of medical opinion
5  regarding treatment, which is insufficient to support a deliberate-indifference claim (id. at
6  8-9).
7      With respect to Jackson and Valenzuela, Defendants maintain that neither are medical
8  providers and, as a result, cannot approve or deny Plaintiff's request for surgery (id. at 10-
9  12). Finally, Defendants maintain that Plaintiff is not entitled to injunctive relief or punitive
10 damages.

### b. *Plaintiff's Response*[5]

In response, Plaintiff asserts that since his 1987 MHE diagnosis, he has received multiple surgeries to remove tumors from his right leg and prescribed narcotic pain medication because of the severity of pain (Doc. 123 at 2-3). Upon his incarceration at the jail, Plaintiff was prescribed oxycodone by Dr. Lizaragga (id. at 4). Plaintiff alleges that despite this prior treatment, his oxycodone was discontinued by Johnson on October 4, 2007, which caused him to suffer extreme pain until October 2009 (id. at 4-5).

Plaintiff asserts that Dr. Mallin recommended surgery, which was not authorized by Defendants (id. at 5-6). Plaintiff argues that Jackson and Valenzuela were aware of Plaintiff's medical needs, but constantly rejected or denied his grievances without taking any action (id. at 7).

### c. *Defendants' Reply*

Defendants reply that Plaintiff did not submit any admissible evidence to refute their arguments or evidence (Doc. 126 at 2-3). Defendants maintain that because Plaintiff failed to introduce any evidence that surgery was appropriate, his claim that he was improperly

---

[5] The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion and the requirements under Federal Rule of Civil Procedure 56 (Doc. 121).

- 7 -

1 denied surgery fails (id. at 3-4).

2 Next, Defendants argue that Plaintiff does not dispute Johnson's declaration with any medical authority or refute her testimony that she saw Plaintiff 123 times (id. at 4). As a result, Defendants maintain that Plaintiff's claim amounts to a difference of opinion, which does not rise to deliberate indifference. Finally, Defendants contend that Plaintiff failed to controvert Defendants' argument that neither Jackson nor Valenzuela could deny any of Plaintiff's medical treatment (id. at 5-6).

### 3. Procedural Issues

Before analyzing Plaintiff's deliberate indifference claims, the Court must address the procedural issues and objections raised by Defendants in their reply (Doc. 126 at 7-11).

Defendants first point out that Plaintiff did not provide Defendants with any of the medical records he listed in his Exhibits Table of Contents. Defendants maintain that Federal Rule of Civil Procedure 56(c) mandates that a party support its assertions by citing to particular parts of the record and, because Plaintiff did not provide his medical records or cite to them, his claims are unsupported. But in light of Plaintiff's pro se status, and because his complaint is verified, the Court will consider the facts presented in Plaintiff's pleading and response. See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (courts should avoid applying summary judgment rules strictly against pro se inmates); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (allegations contained in a pro se plaintiff's verified pleadings must be considered evidence for purposes of summary judgment). Defendants' objection will be overruled.

Similarly, Defendants seek to exclude the Health Needs Request forms that Plaintiff submits with his response (Doc. 125, Ex. 15). Defendants argue that Plaintiff did not previously disclose these documents and that an appropriate sanction is to exclude them (Doc. 126 at 9). The Court disagrees for two reasons. First, as discussed below, Defendants provide Plaintiff's medical records and those records are sufficient to resolve the instant motion without consideration of the proffered request forms. Second, and more importantly, the Court will not exclude them because their inclusion is harmless. Fed. R. Civ. P. 37(c)(1).

1 Most, if not all, of the medical request forms have indications that they were received and 2 responded to by jail personnel, which suggests that Defendants had these forms in their 3 possession. Further, Plaintiff's medical records—that Defendants submitted—reflect 4 hundreds of inmate requests that were scanned into Plaintiff's electronic medical record 5 (Doc. 120-3 at 422-602 "Scanned Documents"). Consequently, Defendants do not allege and 6 the Court fails to see any harm stemming from the inclusion of these documents in the record 7 and their objection will be overruled.

8 Finally, Defendants seek to exclude the three inmate declarations that Plaintiff 9 submitted with his response (Doc. 125, Exs.12-14). Defendants argue that while these 10 declarations were obtained by Plaintiff prior to the close of discovery, they were never 11 disclosed until nearly two years later, which prevented Defendants from deposing these 12 potential witnesses or otherwise challenging their personal knowledge of the events they 13 describe (Doc. 126 at 10). The Court agrees that there is no reason Plaintiff could not have 14 disclosed these witness statements prior to the close of discovery and, as a result, they will 15 not be considered.

### 4. Deliberate Indifference

17 Defendants do not argue that Plaintiff did not have a serious medical need, and the 18 record reflects that Plaintiff suffered from MHE and experienced significant pain. The 19 evidence likewise supports that his condition was worthy of treatment and constituted a 20 serious medical need. See McGuckin, 974 F.2d at 1059-60 (examples of a serious medical 21 need include "[t]he existence of an injury that a reasonable doctor or patient would find 22 important and worthy of comment or treatment; the presence of a medical condition that 23 significantly affects an individual's daily activities; or the existence of chronic and 24 substantial pain"). The Eighth Amendment analysis therefore turns on the subjective 25 prong—whether Defendants' response to Plaintiff's serious medical need was deliberately 26 indifferent. See Jett, 439 F.3d at 1096.

27    *1. Surgery*

28   The record reflects that Plaintiff was evaluated numerous times by a number of

1   medical providers, received two bone scans, and was referred to Dr. Mallin to rule out a
2   tumor malignancy.  Dr. Mallin eventually recommended surgery, opining that it would
3   "improve mechanics and minimize the symptoms" in Plaintiff's left leg and ankle (Doc. 120-
4   3 at 420, 6/17/09 Entry).  Nine days later, Plaintiff was informed that this "approach would
5   not be covered by [the] County" (id., 6/26/09 Entry).  Plaintiff's medical records do not
6   reflect a reason why the surgery was denied.

7   Defendants argue that the surgery was elective and not medically necessary.
8   Defendants' expert, Dr. de Comas, an Orthopaedic surgeon specializing in adult
9   musculoskeletal oncology, declares that she reviewed Plaintiff's medical records and states
10  that "there is a very good chance that surgery would not have helped [Plaintiff's] symptoms,
11  and also a chance [surgery] could have made it worse" (Doc. 120, Ex. 2, de Comas Decl.
12  ¶¶ 1, 9, 11).  She further attests that "absolute indications for surgery would be malignant
13  transformation," which did not occur (id. ¶ 11).

14  In his response, Plaintiff does not offer any evidence that refutes de Comas' opinion
15  that surgery was not medically necessary because there was no malignant transformation and
16  surgery might actually have worsened Plaintiff's symptoms.  Under these circumstances, the
17  Court agrees with Defendants that Plaintiff's claim that he was improperly denied surgery
18  is nothing more than a difference of medical opinion, which is insufficient to establish
19  deliberate indifference.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004)

20  The Court also notes that it is also undisputed that before Dr. Mallin could render an
21  opinion about whether surgery was appropriate, Johnson left the jail for another job, thereby
22  precluding a finding that she denied Plaintiff the recommended surgery.  In short, there is
23  simply no evidence that failing to authorize Plaintiff's surgery was medically unacceptable
24  and Defendants are entitled to summary judgment on this aspect of Plaintiff's claim.

25  ### 2.   *Pain Medication – Johnson*

26  Although the record establishes that Plaintiff was seen numerous times by Johnson
27  and received bone scans and monitoring, that alone does not prohibit a finding of deliberate
28  indifference.  See Estelle, 429 U.S. at 105 & n. 10 (the treatment received by a prisoner can

1  be so bad that the treatment itself manifests deliberate indifference); Lopez v. Smith, 203
2  F.3d 1122, 1132 (9th Cir. 2000) (prisoner does not have to prove that he was completely
3  denied medical care); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) ("access
4  to medical staff is meaningless unless that staff is competent and can render competent
5  care"). The finding that Defendants did not improperly deny Plaintiff the recommended
6  surgery is unrelated to whether they properly addressed his pain. See Clement v. Gomez,
7  298 F.3d 898, 904 (9th Cir. 2002) (citing McGuckin, 974 F.2d at 1059-60).

8  On this issue, the record amply supports the finding—and Defendants do not
9  dispute—that Plaintiff's condition caused him to suffer extreme pain for many years. There
10 is also no dispute that Plaintiff was prescribed narcotic pain medication prior to his
11 incarceration and by Dr. Lizarraga for the first several months of his incarceration (Doc. 120-
12 2 at 239-293).

13 The record also reveals that Plaintiff's oxycodone was discontinued on October 4,
14 2007. Johnson declares that because she was concerned about his long-term opiate use, she
15 "placed [Plaintiff] on an opiate withdraw[al] protocol to control his pain and curtail any
16 adverse side effects of withdrawal" (Doc. 120, Ex. 3, Johnson Decl. ¶ 19). This statement
17 implies that Johnson believed that it was medically appropriate to attempt to wean Plaintiff
18 from oxycodone while still providing him alternative medication to address his pain.
19 Johnson's citations to the record that support this statement reflect that Plaintiff was
20 administered Methadone (Doc. 120-3 at 284, 424). But the record reveals that Plaintiff was
21 not started on Methadone until October 2009—two years later (Doc. 120-2 at 644, Oct. 11,
22 2009 Medication Log). Plaintiff's medication log also does not reflect that Plaintiff received
23 alternative narcotic pain medication after October 4, 2007. And in his declaration, Plaintiff
24 states that after his oxycodone was discontinued, he suffered in pain for two years (Doc. 124,
25 Pl. Decl. ¶¶ 25-26).

26 The Court finds that Johnson's statement is either—at best—a disingenuous
27 misstatement of the evidence, or—at worst—a deliberate attempt to mislead the Court into
28 believing that Plaintiff received appropriate pain medication between October 2007 and

- 11 -

October 2009. In fact, Johnson does not provide any other citation to the record to support her argument that she prescribed pain medication to treat Plaintiff's symptoms while simultaneously attempting to wean him from oxycodone. And, as Defendants aptly noted, Federal Rule of Civil Procedure 56(c) requires a party to support its factual assertions with citations to the record instead of relying on the Court to find support for its arguments. See Orr v. Bank of America, 285 F.3d 764, 775 (9th Cir. 2002) (quoting Huey v. UPS, Inc., 165 F.3d 1084, 1085 (7th Cir. 1999) ("Judges need not paw over the files without assistance from the parties.")); Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("'[J]udges are not like pigs, hunting for truffles buried in briefs.'") (citation omitted).

Nevertheless, the Court has reviewed Plaintiff's extensive medical records. The Court's review confirms that Johnson failed to prescribe narcotic pain medication after she discontinued Plaintiff's oxycodone, despite innumerable requests and unambiguous reports from Plaintiff expressing the pain he was experiencing. For example,[6] the medical records reflect that on October 22, 2007, Plaintiff reported, "I'm not doing good. I can hardly walk. I feel like I got a knife under my knee. I have tumors running in my bones. . . . I'm in terrible pain." (Doc. 120-3 at 647, 10-22-2007 Medical Sick Call); on November 2, 2007, Plaintiff complained of bilateral pain from knee to mid-shin and ambulated with a limp (id. at 416, 11-02-2007 Chart Note); on December 23, 2007, Plaintiff states he is "being ignored" (id. at 417, 12-23-2007 Chart Note); on January 28, 2008, Plaintiff complained about being removed from pain medication that was previously prescribed (id. at 418, 01-28-2008 Chart Note); on February 7, 2008, reports that "legs are killing me" (id. at 231, 02-07-08 Task); on March 23, 2008, reports seeing another inmate receive a narcotic pain medication and wants to know why his oxycodone was discontinued (id. at 418, 03-23-2008 Chart Note); on May 15, 2008, reports "severe pain" "all the time," particularly in the lower portion of his legs (id., 05-15-2008 Chart Note); on July 21, 2008, notes that Plaintiff "has been putting in kites almost daily" (id. at 419, 07-21-2008 Chart Note); and on March 26, 2009, indicates

---

[6] These examples are simply illustrations of Plaintiff's requests for pain medication and are not an exhaustive list.

- 12 -

1  "increased bone pain" (id. at 420, 03-26-2009 Chart Note).

2  Instead, Plaintiff's medical records establish that Johnson prescribed a non-narcotic
3  pain medication because the jail "is a non-narcotic clinic for chronic conditions" (Doc. 120-3
4  at 649, Dec. 31, 2007 Entry).  This statement suggests that Johnson's decision to discontinue
5  Plaintiff's oxycodone stemmed from a belief that chronic conditions should not be treated
6  with narcotic pain medications instead of evaluating the unique needs of each individual
7  patient.  Defendants' expert offers nothing to address this precise issue; she states that
8  Plaintiff's narcotic use would likely make his chronic pain difficult to manage but she does
9  not opine on the propriety of discontinuing oxycodone and refusing to address Plaintiff's
10 subsequent two years of requests for adequate pain medication (Doc. 120-1, Ex. 2, de Comas
11 Decl. ¶ 12).[7]

12 On this record, there is a genuine issue of material fact whether Johnson's course of
13 treatment for Plaintiff's pain was medically acceptable in light of evidence that she was
14 acutely aware of the pain Plaintiff was experiencing and the ineffectiveness of her attempts
15 to treat it.  Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (recognizing that "pain,
16 mental anguish, and suffering" are more than sufficient to constitute harm in the deliberate
17 indifference context).

18 Moreover, in deciding whether there exist disputed material facts regarding deliberate
19 indifference to Plaintiff's pain, the Court need not automatically defer to Johnson's
20 judgment.  Snow v. McDaniel, 681 F.3d 978, 985-86 (9th Cir. 2012) (citing Hunt, 865 F.2d
21 at 200) ("[i]n deciding whether there has been deliberate indifference to an inmate's serious
22 medical needs, we need not defer to the judgment of prison doctors or administrators").  This
23 is true even if there is no expert opinion submitted by Plaintiff because "deliberate
24 indifference to medical needs may be shown by circumstantial evidence when the facts are

---

[7] The Court also notes that de Comas based her opinion on the appropriateness of Plaintiff's pain medication on her review of "the limited records" (Doc. 120-1, Ex. 2, de Comas Decl. ¶ 12).  The Court cannot know what records she reviewed, which further undercuts her opinion on Plaintiff's pain management treatment.

sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) (citations omitted). The Court finds that there are sufficient facts from which a jury could find that Johnson was aware of Plaintiff's extreme pain, her discontinuation of Plaintiff's pain medication, and his innumerable requests to reinstate it. Summary judgment will therefore be denied to Johnson on this aspect of Plaintiff's claim.

### 3. *Pain Medication – Jackson and Valenzuela*

With respect to Jackson and Valenzuela, Defendants maintain that neither are medical providers and, as a result, could not prescribe pain medication or authorize a particular treatment (DSOF ¶¶ 52, 56). And while Plaintiff does not dispute that neither had the authority to prescribe medication, there is substantial evidence that both Jackson and Valenzuela were aware of Plaintiff's multiple requests for pain medication (Doc. 120-4, Ex. 4, Jackson Decl. ¶ 5; Doc. 120-1, Ex. 1, Valenzuela Decl. ¶ 8). Both Defendants attest that they reviewed Plaintiff's grievances, investigated his allegations, and referred his complaints to the medical providers (Jackson Decl. ¶ 6; Valenzuela Decl. ¶¶ 8-10).

In response, Plaintiff offers no evidence suggesting that either Jackson or Valenzuela could have done anything more to address the denial of pain medication. See Williams v. Bennett, 689 F.2d 1370, 1388 (11th Cir. 1982) ("Although each prison employee owes a duty to the inmates affected by his function, that duty must be measured by the scope of discretion and extent of his authority."); Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir. 1984) ("[P]ersonal liability in damages under section 1983 cannot be based on prison conditions beyond the control of the defendant."). The fact that Jackson and Valenzuela investigated Plaintiff's grievances and referred them to the medical providers precludes a finding of deliberate indifference.

The law permits an official who is charged with the knowledge of a risk to prove that he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer v. Brennan, 511 U.S. 825, 844 (1994). Thus, if an official attempts to verify underlying facts and confirm whether a risk of harm exists, he does not act with deliberate indifference. See

id. at 843 n. 8.  For this reason, the Court finds that no genuine issue of material fact exists for trial as to Jackson and Valenzuela, and they are entitled to summary judgment.

### V.     Injunctive Relief and Punitive Damages

Defendants argue that Plaintiff is not entitled to either injunctive relief or punitive damages.  Defendants correctly note that Plaintiff's transfer to the Arizona Department of Corrections moots his request for injunctive relief.  See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.1995) (stating that an inmate's transfer or release from a prison while his claims are pending will generally moot any claims for injunctive relief relating to that prison).  But the Court declines to find at this stage that Plaintiff is not entitled to punitive damages; the Court will allow the jury to determine the motivation for Johnson's actions.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 119).

(2) Defendants' Motion for Summary Judgment (Doc. 119) is **granted in part and denied in part**.

(3) Jackson and Valenzuela are entitled to summary judgment and are **dismissed** from this action along with Counts 6, 7, and 14.

(4) Johnson is entitled to summary judgment as to Plaintiff's claim that he was improperly denied surgery.

(5) The motion is otherwise **denied**.

(6) The remaining claims are Counts 4 and 5 against Johnson for deliberate indifference to Plaintiff's pain.

(7) Plaintiff's Motion for Status (Doc. 128) is **denied as moot**.

DATED this 10th day of September, 2012.

James A. Teilborg
United States District Judge